J-S48004-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| NATHAN EDWARD BROWN | |
| Appellant | No. 277 WDA 2015 |

Appeal from the Judgment of Sentence September 3, 2014
In the Court of Common Pleas of Allegheny  County
Criminal Division at No(s): CP-02-CR-0013601-2013

BEFORE:  BOWES, DUBOW AND MUSMANNO, JJ.

MEMORANDUM BY BOWES, J:                             **FILED JUNE 24, 2016**

Nathan Edward Brown appeals from the judgment of sentence of four to eight years imprisonment that the trial court imposed after a jury convicted Appellant of a violation of the Uniform Firearms Act ("VUFA"), persons not to possess firearms, 18 Pa.C.S. § 6105.  We affirm.

We first examine the evidence supporting the jury's verdict.  In 2012, Appellant was under the supervision of the Pennsylvania Board of Probation and Parole (the "Board"), but had absconded from oversight.  On December 23, 2012, Ashley Munda called police at about 3:00 a.m. and told them that Appellant entered her apartment on 209 Station Street, Penn Hills Township, and, utilizing a silver gun, robbed her and Sandra Leski.  Ms. Munda reported that she knew that the perpetrator was Appellant since she had

"multiple encounters with [Appellant] and he has been at her apartment in the past." Affidavit of Probable Cause, 1/4/13, at 2.

An arrest warrant was issued in connection with that incident. On January 8, 2013, Appellant's parole officer and three Penn Hills Township police executed the warrant by proceeding to 118 Clinton Drive, Penn Hills Township, the residence Appellant had registered with the Board. Appellant's sister allowed the officers into the house, stating that Appellant was in his bedroom. Police discovered Appellant in the designated location, placed him under arrest, and searched the room, discovering packets of heroin and a .22 caliber silver gun in a backpack underneath the bed.

At the Penn Hills Township police station, Detective Anthony Diulus gave Appellant a copy of the criminal complaint underlying the arrest warrant and disseminated **Miranda** warnings. Appellant signed the warnings and waived his rights. Appellant thereafter admitted to Detective Diulus that he possessed the gun and drugs discovered in the backpack. As to the weapon, Appellant told Detective Diulus that, about eighteen months before January 8, 2013, Appellant found the gun in debris in a dumpster outside the house next door to 118 Clinton Drive. Appellant told Detective Diulus that "he decided to keep [the firearm] because of some incidents that have come up in his past of his life that he didn't feel comfortable being out without a firearm in his possession." N.T. Trial, 4/14-16/14, at 87. Appellant then admitted that he always carried the gun on his person, either

- 2 -

in the backpack or his pants, and acknowledged that he "knew he wasn't allowed to possess" the weapon. *Id*. The Commonwealth also presented evidence that Appellant had a prior robbery conviction.

At criminal action number 658 of 2013, Appellant was charged with the VUFA violation at issue in this appeal as well as two counts of robbery and one count each of burglary, possession of a controlled substance, and possession of a controlled substance with intent to deliver ("PWID"). That action encompassed the crimes Appellant allegedly committed on December 23, 2012, as well as the offenses arising from the January 8, 2013 execution of the arrest warrant. Thereafter, the trial court severed the VUFA count from the other charges, and Appellant was tried by a jury on that offense at the present criminal action number, 13601 of 2013. Appellant proceeded *pro se* with the assistance of standby counsel, and was found guilty of the VUFA charge. On September 3, 2014, Appellant was sentenced to four to eight years imprisonment. This timely, counseled appeal followed. Appellant raises these issues:

I. Whether the evidence presented in this matter was legally insufficient to sustain Appellant's conviction of possession of a firearm prohibited.

II. Whether the jury's verdict was against the weight of the evidence.

III. Whether the trial court erred in denying Appellant's post-sentence motions.

IV.   Whether the trial court erred in denying Appellant's motion to suppress the evidence without a hearing.

V.    Whether the trial court erred in denying Appellant's oral motion for a continuance prior to the start of trial.

VI.   Whether the trial court erred in denying Appellant's motion for judgment of acquittal as the evidence presented at trial was legally insufficient (sic) to show that Appellant had actual or constructive possession of the firearm.

VII.  Whether the trial court erred in denying Appellant's request for a failure to call a potential witness jury instruction.

Appellant's brief at 8 (capitalization omitted).

We address the averments *seriatim*. The applicable standard of review of Appellant's first claim is well settled:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Irvin***, 134 A.3d 67, 75-76 (Pa.Super. 2016) (citation omitted).

The pertinent section of VUFA provides, "A person who has been convicted of an offense enumerated in subsection (b) [which includes the crime of robbery], within or without this Commonwealth . . . shall not possess, use, control, sell, transfer or manufacture . . . a firearm in this Commonwealth." 18 Pa.C.S. § 6105(a). Appellant's specific contention is that the Commonwealth failed to prove that he possessed the firearm in question. Since the gun was not found on Appellant's person, the Commonwealth had to establish that he constructively possessed it. ***Commonwealth v. Roberts***, 133 A.3d 759, 767 (Pa.Super. 2016) (where an item that a person is prohibited from possessing is not found on the defendant's body, the Commonwealth must demonstrate that the defendant constructively possessed it). As we observed in ***Roberts***,

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as "conscious dominion." We subsequently defined "conscious dominion" as "the power to control the contraband and the intent to exercise that control." To aid application, we have held that constructive possession may be established by the totality of the circumstances.

***Id***. at 767-68.

- 5 -

In the instant case, the totality of the circumstances were as follows. The gun was found in a backpack underneath a bed in a room identified as Appellant's bedroom. It was given to Detective Diulus, to whom Appellant openly confessed that, when in public, he consistently carried the weapon on his person, either in his pants or a backpack, for his own protection. Appellant admitted that he possessed the firearm in question for approximately eighteen months and was aware that he was not permitted to do so. We thus conclude that the evidence was sufficient to support the jury's finding that Appellant had the power to control the firearm and the intent to exercise that control, and reject this challenge to the sufficiency of the evidence.

Appellant next levels a weight-of-the-evidence claim, which was preserved in his post-sentence motion. When we review such a contention, we do not actually examine the underlying question of whether the conviction was against the weight of the evidence; instead, we review the trial court's exercise of discretion in resolving the averment. *Commonwealth v. Leatherby*, 116 A.3d 73 (Pa.Super. 2015). This type of review is necessitated by the fact that the trial judge heard and saw the evidence presented. *Id*. Indeed, "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice." *Id*. at 82. A new trial is

warranted in this context only when the verdict is "so contrary to the evidence that it shocks one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Commonwealth v. Morales*, 91 A.3d 80, 91 (Pa. 2014).

Appellant contends that the jury's verdict was contrary to the weight of the evidence presented at trial because the officer who discovered the weapon did not testify at trial. Instead, another officer involved in the search described where it was located. Appellant also claims that his confession should be discounted since it was not recorded or transcribed. However, the jury was free to accept Detective Diulus' testimony that Appellant admitted to carrying the gun on his person for over a year and the report of Penn Hills Township Police Officer Joseph Blaze, who participated in the search, that the gun was discovered in Appellant's bedroom. The verdict herein was not so contrary to the evidence that it shocks one's sense of justice. We perceive of no abuse of discretion on the part of the trial judge in rejecting Appellant's weight claim.

Appellant's third allegation is that the trial court erred in denying his post-sentence motion. This position relates to Appellant's parole officer, Andrew Barnes, who participated in the January 8, 2013 search and found the gun in the backpack. At the hearing on his post-sentence motion, Appellant argued that the jury should have been informed that Mr. Barnes had been fired by the Board after falsifying documents and that he also had

been charged with a crime. Appellant contended that the fact that Mr. Barnes falsified documents and committed crimes may have rendered incredible his report to fellow police officers that the gun in question was found in the backpack in Appellant's room. This evidence as to Barnes had been ruled inadmissible prior to trial.

We observed that, "In reviewing a trial court's ruling on the admissibility of evidence, our standard of review is one of deference." *Commonwealth v. Belknap*, 105 A.3d 7, 9 (Pa.Super. 2014). The trial court has the discretion to determine the admissibility of evidence, and this Court does not reverse such a ruling unless that discretion is abused. *Id*. In the present matter, Mr. Barnes did not testify at Appellant's trial. Officer Blaze told the jury about the events that occurred on January 8, 2013. Officer Blaze personally observed the firearm in question in Appellant's bedroom. N.T. Trial, 4/14-16/14, at 62. Additionally, another Penn Hills Township police officer was present when the backpack and gun were recovered. *Id*. at 66. Appellant also admitted to Detective Diulus that the gun was his and that he often kept it in the backpack. We conclude that the information about Mr. Barnes was inconsequential and irrelevant and that the trial court did not abuse its discretion in its evidentiary ruling.

Appellant's fourth allegation is that the trial court erred in denying his motion to suppress the evidence. There are three subsidiary positions raised in connection with this averment. Appellant suggests that there was not a

suppression hearing on his motion, maintains that the search leading to the recovery of the gun was unconstitutional, and posits that his confession to Detective Diulus about possession of the weapon should have been suppressed. The disposition of the other charges filed at action 658-2013 is pertinent to Appellant's present suppression claims. First, there was in fact a hearing. Before it severed the present VUFA charge from the other offenses, the trial court conducted a hearing on Appellant's suppression motion. *Commonwealth v. Brown*, 2016 WL 686482 (Docket number 885 WDA 2014) (Pa.Super. Feb. 19, 2016) (unpublished memorandum at 16). Hence, we reject the position that a hearing was not held.

Additionally, this Court has specifically ruled that the search in question was constitutional and that Appellant's statements to Detective Diulus were not obtained in violation of his Fifth Amendment right against incrimination. *Id*. As noted, Appellant was charged at criminal action 658-2013 with the VUFA offense as well as robbery, burglary, PWID, and possession of a controlled substance. The drug charges were premised upon the heroin discovered in the backpack where the gun at issue herein was recovered.

At the police station, Appellant made admissions to Detective Diulus about the heroin during the same interrogation that led to Appellant's inculpatory remarks about his possession of the gun. Specifically, Appellant told Detective Diulus that the heroin belonged to him and that he sold it

when he needed money. Before the VUFA charge was severed, in his suppression motion, Appellant maintained that the search of his backpack was unconstitutional and that his statements admitting to possession of the gun and drugs should have been suppressed. After his suppression motion was denied and severance on the VUFA charge was granted, Appellant proceeded to a jury trial on the charges pending at case number 658-2013. The jury convicted him of PWID and possession of a controlled substance, but acquitted him of the robbery and burglary offenses.

Appellant filed an appeal from the judgment of sentence imposed on the drug convictions. *Id*. Therein, Appellant raised the same challenges that he now raises in the present appeal, *i.e.*, that the search of his bedroom was unconstitutional and that his admissions to Detective Diulus at the police station should have been suppressed. The prior ***Brown*** panel specifically rejected those positions, upheld the constitutionality of the search, and ruled that his statements were not obtained in violation of his Fifth Amendment right against self-incrimination. ***Id***.

We thus conclude herein that the law of the case doctrine applies. "This doctrine refers to a family of rules which embody the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the matter." ***Commonwealth v. Starr***, 664 A.2d 1236, 1331 (Pa. 1995) (citations omitted). The doctrine provides, in

pertinent part, that "upon a second appeal, an appellate court may not alter the resolution of a legal question previously decided by the same appellate court." *Id*. The applicable legal precept is that "judges of coordinate jurisdiction sitting in the same case should not overrule each other's decisions." *Id*. In the prior appeal, a panel held that the same search at issue herein was valid and that the suppression court properly refused to suppress Appellant's statements to Detective Diulus. The facts and issues are identical to those litigated in the *Brown* decision, filed on February 19, 2016, and the law of the case doctrine compels us to affirm the suppression court's rulings on the search's validity and the admissibility of Appellant's statements. *See Commonwealth v. Jones*, 858 A.2d 1198 (Pa.Super. 2004).

Next, Appellant claims that the trial court erred in denying a motion for a continuance that he made at trial. "The grant or denial of a motion for a continuance is within the sound discretion of the trial court and will be reversed only upon a showing of an abuse of discretion." *Commonwealth v. Antidormi*, 84 A.3d 736, 745 (Pa.Super. 2014) (quoting *Commonwealth v. Boxley*, 948 A.2d 742, 746 (Pa. 2008)). If the defendant levels "a bald allegation of an insufficient amount of time to prepare," such allegation "will not provide a basis for reversal of the denial of a continuance motion." *Antidormi*, *supra* at 745 (quoting *Commonwealth v. Ross*, 57 A.3d 85, 91 (Pa.Super. 2012)). To prevail on

- 11 -

a claim that a continuance was improperly denied, the "appellant must be able to show specifically in what manner he was unable to prepare for his defense or how he would have prepared differently had he been given more time." **Antidormi**, **supra** at 745 (quoting **Ross**, **supra** at 91).

The following facts are relevant. After a jury had been selected, Appellant decided to proceed *pro se* and then demanded a continuance to "prepare an intelligent defense." N.T. 4/14-16/14 at 10. The Commonwealth witnesses were present and ready to testify. The trial court found Appellant's request was dilatory and unnecessary in that counsel had adequately prepared him for trial. We perceive of no abuse of discretion herein. Appellant's issue necessarily fails since, on appeal, he does not demonstrate how he could have prepared for a trial differently if given more time. The gun was found in his bedroom in a backpack, and he admitted that he carried the gun on his person for eighteen months prior to its discovery.

Appellant's sixth issue on appeal is that the trial court erred in denying his motion for judgment of acquittal in that there was insufficient evidence to establish that he constructively possessed the gun. This claim is a repetition of the first one presented on appeal. As previously analyzed, the proof adduced by the Commonwealth's evidence at trial was sufficient to sustain the possession element of the VUFA conviction.

Lastly, Appellant alleges that the trial court erred in denying his request for a missing witness jury instruction as to Mr. Barnes.

> In reviewing a challenge to the trial court's refusal to give a specific jury instruction, it is the function of this Court to determine whether the record supports the trial court's decision. In examining the propriety of the instructions a trial court presents to a jury, our scope of review is to determine whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case. . . . The trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the Appellant was prejudiced by that refusal.

*Commonwealth v. Sandusky*, 77 A.3d 663, 667 (Pa.Super. 2013). The following principles underlie a meritorious position that the proof warrants an instruction that an adverse inference can be drawn from a party's failure to present a witness:

> When a potential witness is available to only one of the parties to a trial, and it appears this witness has special information material to the issue, and this person's testimony would not merely be cumulative, then if such party does not produce the testimony of this witness, the jury may draw an inference that it would have been unfavorable.

> *Commonwealth v. Manigault*, 501 Pa. 506, 510-11, 462 A.2d 239, 241 (1983).

> . . . .

> To invoke the missing witness instruction against the Commonwealth, the witness must only be available to the Commonwealth[.]

*Commonwealth v. Boyle*, 733 A.2d 633, 638-39 (Pa.Super. 1999).

In this case, Appellant failed to establish that Mr. Barnes was available only to the Commonwealth. Appellant could have subpoenaed Mr. Barnes himself if he wanted to present him as a witness. Additionally, there is no indication that Mr. Barnes, who participated in a search witnessed by other police officers, had special information. Finally, Appellant's confessions were made to Detective Diulus at the police station, and, due to those confessions, Mr. Barnes' testimony was not material. Therefore, the trial court did not err in denying Appellant's request for a missing witness jury instruction.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/24/2016